## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

ETHAN HSU, an individual,

      Plaintiff,

v.

COBHAM COLORADO SPRINGS INC., a Delaware corporation,
SANDY DEALE, an individual

      Defendants.

_____

## COMPLAINT AND JURY DEMAND
_____

Plaintiff Ethan Hsu ("Mr. Hsu"), through counsel, Lewis Kuhn Swan PC, submits his Complaint and Jury Demand ("Complaint") as follows:

## <u>PARTIES</u>

1.      Mr. Hsu is an individual who resides in the State of Colorado.

2.      Defendant Cobham Colorado Springs Inc. ("Cobham") is a corporation organized under the laws of the State of Delaware with its principal place of business in Colorado Springs, Colorado.

3.      Sandy Deale ("Ms. Deale") was, at the point of his separation from employment, Mr. Hsu's direct supervisor and held the title Director of Finance. Ms. Deale acted, directly or indirectly, in the interests of Cobham as to employees of Cobham, exercised day-to-day control of Mr. Hsu's employment conditions, and was involved in the supervision of and payment to Mr. Hsu. Upon information and belief, Ms. Deale resides in the State of Colorado.

4.      Cobham and Ms. Deale will be referred to collectively as "Defendants."

**JURISDICTION AND VENUE**

5.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action is brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (the "federal claims").

6.      This Court has supplemental jurisdiction for the claim asserted under Colorado state law in that the state law claim is part of the same case and controversy as the federal claims, the federal and state claims derive from a common nucleus of operative facts, the state claim will not substantially dominate over the federal claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

7.      This Court has personal jurisdiction over Cobham because, among other things, this action arises out of events that occurred in the State of Colorado.

8.      This Court has personal jurisdiction over Ms. Deale because she is a resident and citizen of Colorado.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful conduct complained of herein arose and occurred in the District of Colorado.

**GENERAL ALLEGATIONS**

10.     Cobham is ultimately a subsidiary of Cobham plc, a British entity, and is among the 50 largest defense contracting firms worldwide. In 2018, Cobham plc generated revenues of GBP 1,863,000,000 (or approximately $2.4 billion).

11.     Cobham employs more than fifty (50) employees and is a covered employer under the FMLA.

12.     Beginning on or around July 11, 2016, Cobham employed Mr. Hsu as a "Manager, FP&A and Programs." Mr. Hsu was earning approximately $4,667 semi-monthly. Subsequent to his hire, Mr. Hsu's title changed to "Principal Financial Analyst." Mr. Hsu's employment offer dated May 10, 2016 does not specify whether Mr. Hsu was to be classified as exempt or non-exempt under the FLSA and Colorado state law.

13.     An analysis of Mr. Hsu's actual job duties makes plain he was non-exempt from the overtime and minimum wage requirements of the FLSA and Colorado state law.

14.     As a non-exempt employee, Mr. Hsu was entitled to receive overtime compensation at a rate of not less than one-and-one-half his regular rate of pay for all hours worked in excess of forty (40) hours in a workweek. He was also entitled to minimum wages for all other hours: $7.25 federally and, as set out below, $8.31 through $10.20 (depending on the year) under applicable state law.

15.     Mr. Hsu frequently worked over forty (40) hours per workweek and often worked more than forty-five (45 hours) per workweek. Cobham, however, did not keep accurate time records of the time Mr. Hsu worked.

16.     Mr. Hsu did not receive the full overtime and minimum wage compensation to which he was entitled.

17.     During 2018, Mr. Hsu suffered two heart attacks for which he was under medical care. Because of his serious health condition, Mr. Hsu availed himself of leave rights pursuant to the FMLA on two occasions during 2018. During the first occasion, Mr. Hsu was managed by Jeff Marjamaa who was understanding of Mr. Hsu's condition and appears to have complied with the FMLA.

3

18.     During the second occasion, as Mr. Hsu's supervisor, and acting in Cobham's interest as to Mr. Hsu, Ms. Deale engaged in a variety of conduct to interfere with Mr. Hsu's exercise of his FMLA rights and then retaliated against Mr. Hsu for exercising those rights.

19.     Among other things, Ms. Deale prevented Mr. Hsu from working his (and others') usual "9/80" schedule and instead forced him to work an "8/40" schedule. (The numerator is the minimum number of hours worked per day and the denominator is the minimum number of hours in the relevant timeframe—two weeks and one week respectively.) Mr. Hsu's physicians did not advise him of any need to change his schedule. Ms. Deale simply decreed that a change in schedule was what she wanted to see despite Mr. Hsu's requests otherwise.

20.     Moreover, Ms. Deale forced Mr. Hsu to take lengthy lunch breaks—longer than he took previously and longer than his peers took—despite the lack of any medical indication for doing so.

21.     Still further, upon Mr. Hsu's exercise of his FMLA rights, Ms. Deale began to create sundry allegations of performance issues against Mr. Hsu. These allegations were fictitious and created in retaliation for Mr. Hsu's leave pursuant to the FMLA. The allegations were serious enough to lead to further adverse employment action specified *infra*.

22.     On Thursday, November 8, 2018, Mr. Hsu was offered a performance improvement plan laying out Ms. Deale's "areas of concern" (all of which are pretextual) from Jorunn Cloutier from Cobham's Human Resources Department.

23.     In a meeting with Ms. Cloutier on November 8, 2018, Cobham offered Mr. Hsu a choice: He could resign with a certain nominal severance payment or he could remain employed by Cobham subject to the above-referenced performance improvement plan. Mr. Hsu was provided

4

a ten-page "Separation Agreement and General Release" for his consideration. Ms. Cloutier emphasized he could either resign pursuant to the Separation Agreement and General Release or he could remain a Cobham employee. Ms. Cloutier instructed Mr. Hsu to decide by Friday, November 9, 2018.

24.     Mr. Hsu signed the agreement on November 9, 2018.

25.     In Section III.10, the Separation Agreement and General Release provides that Mr. Hsu "may revoke this Agreement within seven calendar days of signing it."

26.     In an email to Mr. Hsu that same day, Ms. Cloutier confirmed that Mr. Hsu "still ha[d] a 7 day revocation period in case [Mr. Hsu] wish[es] to withdraw. This end date would be next Friday by close of business 11/16/2018."

27.     On November 16, 2018 (within seven days of Mr. Hsu having signed the Separation Agreement and General Release), Mr. Hsu formally revoked the Agreement in writing with copies of the letter to Ms. Cloutier delivered via email, fax, and hand delivery. The November 16, 2018 revocation letter specified that Mr. Hsu looked forward to returning to work on Monday, November 19, 2018.

28.     Later on November 16, 2018, Ms. Cloutier confirmed receipt of Mr. Hsu's revocation and acknowledged in writing that it was properly received "within the time parameters allowed."

29.     Ms. Cloutier said that Mr. Hsu was unable to return to work on Monday, November 19, 2018 only because Mr. Hsu first had to "complete a background and drug screen . . . to reinstate access to [Cobham's] facility." Ms. Cloutier provided the requisite forms "for quick turn-around" and specified that Mr. Hsu should "allow 5-10 business days for these screens to clear[.]" At that

point, he would be cleared to return to work. Ms. Cloutier specified that should Mr. Hsu "wish to continue rejoining us at Cobham Advanced Solutions," she would need a reply by Monday, November 19, 2019.

30.     Troublingly, the forms sent by Ms. Cloutier contained sensitive identifying information (including the Social Security number) of a different employee. When apprised of this, Ms. Cloutier sent blank forms.

31.     Per Ms. Cloutier's request, a reply to her request for confirmation was timely provided on Monday, November 19, 2019 specifying that Mr. Hsu "is not a 'former employee[.]'"

32.     Four minutes after the requested reply was sent, Ms. Cloutier confirmed receipt and said that she would "look for [Mr. Hsu's] required forms to move forward" with his return to work.

33.     Less than 24 hours later, Mr. Hsu provided his executed background check disclosure and authorization form. This November 20, 2018 correspondence to Ms. Cloutier requested "further instructions about the drug screen (as well as any other steps reasonably necessary on the part of Mr. Hsu) before his return to work."

34.     On Wednesday, November 21, 2018, the undersigned sent a letter to Ms. Cloutier confirming that all requisite documentation had already been provided and asking Ms. Cloutier to advise if she did not receive it. The undersigned asked "what steps Mr. Hsu needs to complete by way of a drug screen or any other logistical procedures" and specified that "Mr. Hsu looks forward to promptly resuming his work[.]"

35.     The November 21, 2018 letter identified that Cobham had engaged in conduct in violation of the FMLA by interfering with Mr. Hsu's FMLA rights and discriminating against Mr. Hsu for exercising such rights. After being apprised of its illegal conduct pursuant to the FMLA,

Cobham refused to return Mr. Hsu to work.

36.     Mr. Hsu complied fully with the revocation provisions of the Separation Agreement and General Release and all other requirements placed on him to continue as a Cobham employee.

37.     While Mr. Hsu had provided all requisite documentation and complied with the requirements placed on him by Cobham, he had not yet been returned to work a month later. During this period he was (and remained) ready, willing, and able to return to work.

38.     On December 17, 2018, the undersigned wrote to Cobham's General Counsel and, among other things, exhorted him to "get [Mr. Hsu] back to work." Cobham said nothing about his current status of employment (and, in fact, represented to the Colorado Department of Labor and Employment that Mr. Hsu remained employed by Cobham).

39.     Bizarrely, despite having previously confirmed Mr. Hsu's compliance with all such requirements, Cobham now takes the position that the same day Mr. Hsu was offered the choice of a severance agreement or remaining employed by Cobham—Friday, November 9, 2018—Mr. Hsu was purportedly terminated. The first time Mr. Hsu's purported termination (and Mr. Hsu's purported termination as of November 9, 2018 specifically) was mentioned to the undersigned or to Mr. Hsu was on January 30, 2019 in an email from Cobham's General Counsel. Mr. Hsu remained ready, willing, and able to work at all points.

40.     Mr. Hsu was not informed of his termination at any point, much less as of November 9, 2018.

### FIRST CLAIM FOR RELIEF
*Fair Labor Standards Act*
*(29 U.S.C. §§ 201 et seq.)*
**Mr. Hsu against Defendants**

41.     Mr. Hsu incorporates by reference all preceding paragraphs of this Complaint.

42.     At all times relevant to this Complaint, Cobham was an employer within the meaning of the FLSA.

43.     During Mr. Hsu's final part of his tenure with Cobham, Ms. Deale was an employer within the meaning of the FLSA. Specifically, Ms. Deale supervised Mr. Hsu and, in part, controlled his pay. Moreover, she exercised day-to-day control of Mr. Hsu's work duties.

44.     At all times relevant to this Complaint, Cobham employed Mr. Hsu within the meaning of the FLSA.

45.     During the final part of his tenure with Cobham, Ms. Deale employed Mr. Hsu within the meaning of the FLSA.

46.     Mr. Hsu worked over forty (40) hours per workweek during his employment and was thus entitled to overtime compensation at a rate of not less than one-and-one-half his regular rates of pay.

47.     Mr. Hsu did not receive all minimum wages and overtime compensation to which he was entitled.

48.     Defendants' violations of the FLSA were not in good faith because, among other things, they were well aware of their legal obligations to pay minimum wage and overtime compensation because Cobham employs individuals to whom it pays mandatory overtime premiums.

49.     Because Defendants' violations of the FLSA were not in good faith, Mr. Hsu is entitled to liquidated damages.

50.     Defendants failed to make, keep, and preserve records with respect to Mr. Hsu sufficient to determine the wages, hours, and other conditions and practices of his employment in

violation of the FLSA.

51.     The foregoing conduct, as alleged, constitutes willful violations of the FLSA pursuant to 29 U.S.C. § 255(a).

52.     Due to Defendants' FLSA violations, Mr. Hsu is entitled to recover from Defendants unpaid minimum wages and overtime compensation, actual and liquidated damages, including Cobham's share of FICA, FUTA, Colorado unemployment insurance, and any other required employment taxes, reasonable attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b) in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
*Colorado Minimum Wage Order/Colorado Wage Payment Act*
*(7 CCR § 1103-1)*
**Mr. Hsu against Cobham**

53.     Mr. Hsu incorporates by reference all preceding paragraphs of this Complaint.

54.     At all times relevant to this Complaint, Cobham employed Mr. Hsu within the meaning of the Colorado Minimum Wage Order, set forth at 7 CCR § 1103-1, which is applicable to Cobham.

55.     Cobham willfully violated the Colorado Minimum Wage Order by failing to pay Mr. Hsu at a rate not less than one-and-one-half his regular rates of pay for each hour he worked in excess of forty (40) per workweek and/or twelve (12) in any one workday.

56.     Cobham also violated the Colorado Minimum Wage Order by failing to pay Mr. Hsu minimum wages to which he was entitled.

57.     Due to Cobham's Minimum Wage Order violations, Mr. Hsu is entitled to recover from Cobham unpaid overtime compensation, actual damages, including Cobham's share of FICA, FUTA, Colorado unemployment insurance, and any other required employment taxes, reasonable

attorneys' fees, and costs and disbursements of this action pursuant to the Colorado Minimum Wage Order in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
*FMLA Interference*
*(29 U.S.C. § 2615(a)(1))*
**Mr. Hsu against Defendants**

58.     Mr. Hsu incorporates by reference all preceding paragraphs of this Complaint.

59.     The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).

60.     Among other things, the interference provision of the FMLA "prohibits an employer from discriminating or retaliating against an employee . . . for having exercised . . . FMLA rights . . . [E]mployers cannot use the taking of FMLA rights as a negative factor in employment actions[.]" 29 C.F.R. § 825.220(c).

61.     Cobham is an employer engaged in commerce as defined by the FMLA. Among other things, Cobham employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

62.     Ms. Deale is an employer as defined by the FMLA because, at all times relevant to the Complaint, she acted directly or indirectly in the interest of the employer (*i.e.*, Cobham) as to any of the employees of such employer.

63.     Mr. Hsu was, at all relevant times, an eligible employee within the meaning of the FMLA.

64.     Mr. Hsu was entitled to take FMLA leave and lawfully took such leave because of his serious health condition.

10

65.     Mr. Hsu gave Defendants adequate notice, provided proper medical documentation for his serious health condition, and followed Cobham's policies in requesting medical leave.

66.     Defendants nonetheless interfered with Mr. Hsu's right to take FMLA leave by, without limitation, altering his schedule in negative ways without medical justification and by concocting performance issues in a transparent effort to terminate him.

67.     Defendants took the above actions in an effort to interfere with Mr. Hsu's rights under the FMLA and to punish Mr. Hsu for requesting leave under the FMLA.

68.     Defendants' interference with Mr. Hsu's right to take FMLA leave has damaged Mr. Hsu in an amount to be proven at trial including, without limitation, by loss of pay.

69.     Defendants' interference with Mr. Hsu's right to take FMLA leave was not in good faith because, among other things, Mr. Hsu made clear (on several occasions) his need to take FMLA leave and the reasons therefor. Mr. Hsu is thus entitled to an award of liquidated damages.

### FOURTH CLAIM FOR RELIEF
*FMLA Discrimination and Retaliation*
*(29 U.S.C. § 2615(a)(2))*
**Mr. Hsu against Defendants**

70.     Mr. Hsu incorporates by reference all preceding paragraphs of this Complaint.

71.     The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." 29 U.S.C. § 2615(a)(2).

72.     Mr. Hsu engaged in protected activity on several occasions, including when he requested and then took leave pursuant to the FMLA.

73.     Defendants discriminated and retaliated against Mr. Hsu by, without limitation, altering his schedule in negative ways without medical justification, by concocting performance

issues in a transparent effort to terminate him, and then prohibiting his return to work upon his allegations of illegal conduct under the FMLA.

74.     Defendants' discrimination and retaliation concerning Mr. Hsu's right to take FMLA leave has damaged Mr. Hsu in an amount to be proven at trial including, without limitation, by loss of pay.

75.     Defendants' discriminatory and retaliatory conduct described in this Complaint was not in good faith. Mr. Hsu is thus entitled to an award of liquidated damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Hsu prays for the following relief:

1.      Judgment in his favor on his claims for relief;

2.      Nominal, pecuniary, actual, and compensatory damages;

3.      Liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation;

4.      Liquidated and/or punitive damages as a result of Defendants' willful failure to keep and maintain accurate pay records;

5.      Liquidated and/or punitive damages for Defendants' FLSA interference;

6.      Liquidated and/or punitive damages for Defendants' FLSA discrimination and retaliation;

7.      Costs and expenses of this action along with attorneys' and experts' fees;

8.      Damages representing Cobham's share of FICA, FUTA, Colorado unemployment insurance, and any and all other required employment taxes;

9.      Pre- and post-judgment interest at the maximum rate permitted by applicable law;

10.     A declaratory judgment that the conduct complained of herein is unlawful; and

11.     Any and all such other and further legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Hsu hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

Respectfully submitted this 18th day of April, 2019.

*/s/ Andrew E. Swan*
Paul F. Lewis
Michael D. Kuhn
Andrew E. Swan
LEWIS | KUHN | SWAN PC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903
Telephone:     (719) 694-3000
Facsimile:     (866) 515-8628
Email:          plewis@lks.law
                mkuhn@lks.law
                aswan@lks.law

*Attorneys for Plaintiff*

Plaintiff's Address:
5716 Canyon Reserve Heights
Colorado Springs, CO 80919